UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| William James Mathew Wallace II,<br><br>               Plaintiff,<br><br>    v.<br><br>Pierce County Sheriff's Department et al.,<br><br>               Defendants. | CASE NO. 3:19-cv-05329-RBL-DWC<br><br>ORDER |

Plaintiff William James Mathew Wallace II, proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's Complaint under 28 U.S.C. § 1915A, the Court declines to serve Plaintiff's Complaint but provides Plaintiff leave to file an amended pleading by June 16, 2019 to cure the deficiencies identified herein. The Court also denies Plaintiff's Motion for Appointment of Counsel (Dkt. 15) and Motion for Subpoena (Dkt. 16).

## BACKGROUND

Plaintiff, who is incarcerated at the Los Angeles County Men's Central Jail, alleges Defendants Naphcare Medical ("Naphcare") and Pierce County Jail Sheriff's Department acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment and the Americans with Disabilities Act ("ADA"). Dkt. 13. Plaintiff alleges in 2017 he was arrested and confined at the Pierce County Jail ("the Jail"). Dkt. 13 at 2-3; 14 at 2. Plaintiff alleges he had broken his leg prior to his arrest and was under the care of an orthopedic surgeon at the time. *Id.* Plaintiff alleges upon his placement in the Jail, he did not receive any accommodations for his leg and was housed on an upper bunk. *Id.* Plaintiff alleges he requested medical attention for three weeks but was not seen by the Jail's contracted medical provider, Defendant Naphcare. *Id.* After the three-week wait, Plaintiff alleges an x-ray was taken and a cast[1] was put on leg. *Id.* Plaintiff alleges the individual who put on the cast stated she didn't know what she was doing and her co-worker assisted her with the "help of a picture book." Dkt. 14 at 2. Plaintiff alleges he was given crutches and moved to the Jail's medical unit. *Id.* Plaintiff alleges during his time in the medical unit, he was given incorrect medications and confused with another prisoner. *Id.* Plaintiff alleges he went to the medical clinic for a check-up and the splint was replaced. Dkt. 14. at 2.

Plaintiff alleges four weeks later another x-ray was taken. *Id.* Plaintiff alleges the x-ray technician told him his leg was still broken, and it was a complicated break. *Id.* Two days later, Plaintiff alleges he saw a doctor for the first time, who told Plaintiff his leg was no longer broken. Dkt. 13 at 3-4; 14 at 2. Plaintiff alleges the doctor removed Plaintiff's cast and took the

---

[1] Plaintiff refers to the treatment for his broken leg as a cast and splint interchangeably. *See* Dkts. 13, 14.

crutches. Dkt. 13 at 4; Dkt. 14 at 2. Plaintiff also alleges he fell in the medical unit and hit his head when he attempted to put weight on his leg. Dkt. 14 at 2. Plaintiff alleges medical was called, and his vitals were checked. *Id.*

Plaintiff alleges he was moved from the medical unit into general population at the Jail, placed on an upper bunk, unable to walk, and in severe pain. Dkt. 14 at 2. Plaintiff alleges for the next six weeks he was ignored and only provided a muscle rub for his leg. *Id.* Plaintiff alleges the entire time he was housed at the Jail he was without access to ADA compliant showers or cells and no accommodations were made. *Id.* at 3.

Plaintiff alleges he has now seen two orthopedic surgeons who have determined Plaintiff has a non-union of his medial malleolus of the left tibia, and both surgeons stated this is because of the delay in proper treatment. *Id.* at 3. Plaintiff alleges he will never be able to walk normally again and without pain. *Id.* Plaintiff alleges he has been approved to have corrective surgery which will entail a bone graft and screws to re-attach his bones. *Id.* Plaintiff alleges he now uses a wheelchair for mobility. *Id.*

When Plaintiff was transferred from the Jail to the Department of Corrections ("DOC") he alleges he was sent without any medical records, transported improperly, and forced to walk. Dkt. 13 at 4.

Plaintiff seeks $1 billion dollars in damages. Dkt. 13 at 5.

**DISCUSSION**

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to

state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

I. **Section 1983 Claims**

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must sufficiently allege that: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second step, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Plaintiff alleges Defendants violated his rights under the Eighth Amendment when he was denied medical treatment for his broken leg and received incorrect medication. Dkts. 13, 14. Based on the allegations in the Complaint, Plaintiff was not incarcerated following a formal adjudication of guilt at the time of the alleged violations. Dkts. 13, 14. As such, conditions of confinement imposed on him are governed by the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards." *Frost*, 152 F.3d at 1128; *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

Plaintiff has named two Defendants: Naphcare, the medical provider at the Jail, and the Pierce County Jail Sheriff's Department. Dkts. 13, 14.

With respect to Defendant Naphcare, an entity can be found liable under § 1983 only where the entity itself causes the constitutional violation at issue, but "respondeat superior or vicarious liability will not attach under § 1983." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95 (1978). If "there is no constitutional violation, there can be no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). To establish § 1983 entity liability, Plaintiff must prove that (1) he was deprived of a constitutional right; (2) the entity had a custom or policy; (3) that amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (citing *Monell*, 436 U.S. at 694).

Here, Plaintiff alleges he did not receive adequate treatment for his leg and he received incorrect medication.[2] Dkts. 13, 14. From these allegations, Plaintiff not identified any Naphcare

---

[2] Plaintiff also alleges Defendants' actions constituted negligence and malpractice. Dkt. 13 at 3. However, medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004). While the Court does not make a determination on supplemental jurisdiction at this time, to the extent Plaintiff intended to allege claims arising under state law, Plaintiff is advised that a federal district court's exercise of

custom or policy which amounts to deliberate indifference, or that any such policy was the moving force behind a constitutional violation. Thus, Plaintiff has not alleged a claim against Naphcare. The Court notes Plaintiff's Complaint alleges he was seen by various nurses, an x-ray technician, and one doctor. *See* Dkts. 13, 14. However, Plaintiff has failed to name these individuals as Defendants. If Plaintiff wishes to pursue claims against these individuals, he must name them as Defendants in his amended complaint and allege facts sufficient to meet the required elements of a claim of deliberate indifference.

The Pierce County Jail Sheriff's Department is not a legal entity capable of being sued under § 1983. Rather, Pierce County, a municipality, would be the proper defendant. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978); *Wright v. Clark County Sheriff's Office*, 2016 WL 1643988, *2 (W.D. Wash. April 26, 2016). To set forth a claim against a municipality, a plaintiff must show the defendant's employees or agents acted through an official custom, pattern, or policy permitting deliberate indifference to, or violating, the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *Id.* at 690-91. A plaintiff must show (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to a plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *See Oviatt v. Pearce*, 954 F.3d 1470, 1474 (9th Cir. 1992).

Plaintiff has not named Pierce County as a defendant or alleged facts to show Pierce County is liable. *See* Dkts. 13, 14. If Plaintiff seeks to sue Pierce County, he must name Pierce

---

supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim is a matter of discretion. 28 U.S.C. § 1367(a); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir. 1989). Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has dismissed all claims over which it has original jurisdiction, it may, in its discretion, dismiss without prejudice supplemental state law claims brought in the same action.

County as a defendant and allege facts sufficient to meet the required elements of a claim against a municipality and show Pierce County violated his constitutional rights.

## II. ADA Violations

Plaintiff alleges he was denied an ADA shower and cell. Dkts. 13, 14.

The ADA applies to prisons and jails and prohibits discrimination against disabled or handicapped persons. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). The ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"To state a claim of disability[3] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002).

In order to recover money damages under Title II, a plaintiff must prove that he was discriminated against intentionally and the Ninth Circuit uses the "deliberate indifference

---

[3] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

standard." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138–39 (9th Cir. 2001). To prove intentional discrimination, Plaintiff must show: 1) that a public entity had knowledge that a violation of his rights under the ADA was substantially likely to occur; and 2) at a minimum, the public entity failed to act. *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir. 2002).

Plaintiff does not allege Defendant Naphcare is a public entity, nor does he allege Defendant Naphcare, as a medical provider, was responsible for providing ADA cells and showers. *See* Dkts. 13, 14. Therefore, Defendant Naphcare is not subject to Title II under the ADA and not a proper defendant for Plaintiff's allegations related to an ADA shower and cell. *See Everson v. Leis*, 556 F.3d 484, 501 & n.7 (6th Cir. 2009) (The proper defendant for a claim brought under Title II of the ADA is the public entity responsible for the alleged discrimination.); *Green v. City of New York,* 465 F.3d 65, 79 (2nd Cir. 2006) (holding a private hospital performing services under a contract with a municipality, even if it did so according to the municipality's rules and under its direction, was not "a creature of any governmental entity. Instead it is a parallel private entity."); *Edison v. Douberly,* 604 F.3d 1307, 1310 (11th Cir. 2010) (holding a private prison management corporation that contracted to provide prison management services to Florida was not a public entity within the meaning of Title II and that " 'instrumentality of a State' refers to governmental units or units created by them.").

With respect to Defendant Pierce County Jail Sheriff's Department, Plaintiff fails to allege facts showing Defendant Pierce County Jail Sheriff's Department discriminated against him *on the basis of* his alleged disability. "The ADA prohibits discrimination *because of* disability, not inadequate treatment for disability." *Simmons v. Navajo Cty,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of

its disabled prisoners.... The ADA does not create a remedy for medical malpractice.")). Thus, Plaintiff has failed to state a claim under Title II of the ADA against Defendant Pierce County Jail Sheriff's Department.

If Plaintiff elects to file an amended pleading re-alleging his ADA claims, he must include facts supporting each element discussed above and name the correct defendant.

### III. Instructions to Plaintiff

If Plaintiff intends to pursue a § 1983 civil rights action in this Court, he must file an amended complaint and within the amended complaint, he must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). In addition, if Plaintiff wishes to pursue a claim pursuant to Title II of the ADA against Defendant Pierce County Jail Sheriff's Department, Plaintiff should show intentional discrimination and Defendants acted with deliberate indifference, which requires both knowledge a harm is likely and a failure to act upon such a likelihood. *See Duvall,* 260 F.3d at 1138.

Plaintiff shall present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it should contain the same case number, and it may not incorporate any part of the original complaint by reference. The amended complaint will act as a complete substitute for the Original Complaint, and not as a supplement. The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to the alleged

violations of Plaintiff's rights. The Court will not authorize service of the amended complaint on any defendant who is not specifically linked to a violation of Plaintiff's rights.

If Plaintiff fails to file an amended complaint or fails to adequately address the issues raised herein on or before June 16, 2019, the Court will recommend dismissal of this action pursuant to 28 U.S.C. § 1915.

**PENDING MOTIONS**

**I.       Motion to Appoint Counsel (Dkt. 15)**

Plaintiff field a Motion to Appoint Counsel. Dkt. 15. Plaintiff states his case is complex and will be difficult to litigate because of his lack of experience. Dkt. 15.

No constitutional right to appointed counsel exists in a § 1983 action. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981); *see United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995) ("[a]ppointment of counsel under this section is discretionary, not mandatory"). However, in "exceptional circumstances," a district court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1) (formerly 28 U.S.C. § 1915(d)). *Rand v. Roland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *overruled on other grounds*, 154 F.3d 952 (9th Cir. 1998). To decide whether exceptional circumstances exist, the Court must evaluate both "the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). A plaintiff must plead facts showing he has an insufficient grasp of his case or the legal issues involved and an inadequate ability to articulate the factual basis of his claims. *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004).

At this time, Plaintiff has not shown, nor does the Court find, this case involves complex facts or law. Plaintiff has also not shown an inability to articulate the factual basis of his claims in a fashion understandable to the Court. For example, Plaintiff clearly articulated his claims in his Complaint, and other motions filed with the Court. Dkts. 13, 14, 15, 16. As the Court has screened and declined to serve Plaintiff's Complaint, Plaintiff has not shown he is likely to succeed on the merits of his case.

Accordingly, the Court finds Plaintiff has failed to show appointment of counsel is appropriate at this time. Plaintiff's Motion for Appointment of Counsel (Dkt. 15) is denied without prejudice.

## II. Motion for Subpoena (Dkt. 16)

Plaintiff filed a Motion for Subpoena, requesting the Court subpoena records from Naphcare to provide evidence to support Plaintiff's claims. Dkt. 16. The Court has determined Plaintiff's Complaint shall not be served at this time but has given Plaintiff an opportunity to file an amended complaint. To the extent Plaintiff is seeking discovery from Defendants, his request is premature. In this case, the discovery period will begin when the Court enters a pre-trial scheduling order, which will occur after an answer has been filed by Defendants. As the Court has not yet served Plaintiff's Complaint or entered a pre-trial scheduling order, the discovery period has not yet begun. Accordingly, Plaintiff's Motion for Subpoena (Dkt. 16) is denied without prejudice as premature.

**INSTRUCTIONS TO THE CLERK**

The Court directs the Clerk to provide Plaintiff with the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint and for service and provide Plaintiff with copies of this Order and Pro Se Instruction Sheet.

Dated this 16th day of May, 2019.

*David W. Christel*
David W. Christel
United States Magistrate Judge