UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLLIAM JAMES MATHEW
WALLACE, II,

                    Plaintiff,

        v.

NAPHCARE HEALTHCARE, et al.,

                    Defendants.

CASE NO. 3:19-CV-5329-MJP-DWC

REPORT AND RECOMMENDATION

Noting Date: December 11, 2020

        The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

States Magistrate Judge David W. Christel. Presently before the Court is: (1) Defendants

Balderrama, Blower, Heishman, and Pierce County's ("Pierce County Defendants") Motion for

Summary Judgment (Dkt. 96); (2) Defendant City of Tacoma's Motion to Dismiss (Dkt. 98); and

(3) Defendants Bailey, Hughes, NaphCare Inc.,[1] Slothower,[2] Stixrood, and Warren's ("Medical

Defendants'") Motion for Summary Judgment (Dkt. 100).

---

[1] NaphCare Inc. was erroneously named as Naphcare Healthcare. Dkt. 94, 100.
[2] Defendant Johnathon Slothower was erroneously named as John Slohouser. Dkt. 94, 100.

1    The Court concludes Plaintiff has failed to state a claim against Defendant City of

2    Tacoma showing his constitutional rights were violated under § 1983. Accordingly, the Court

3    recommends the Motion to Dismiss be granted and Defendant City of Tacoma be dismissed from

4    this action.

5    Furthermore, the Court concludes Plaintiff has failed to establish an issue of fact as to

6    whether the Medical Defendants or the Pierce County Defendants acted with objective deliberate

7    indifference in providing Plaintiff with medical treatment at the Pierce County Jail. Plaintiff has

8    also failed to state a claim based on his allegations related to conditions of confinement and

9    Americans with Disabilities ("ADA") violations. Accordingly, the Court recommends the Pierce

10   County Defendants' Motion for Summary Judgment (Dkt. 96) and the Medical Defendants'

11   Motion for Summary Judgment (Dkt. 100) be granted and this case be closed.

12   **I.      Background**

13   Plaintiff, a pre-trial civil detainee housed at the Pierce County Jail at the time of the

14   alleged violations, alleges his constitutional rights were violated by the Pierce County and

15   Medical Defendants when he suffered an ankle injury and back, neck, and shoulder pain. Dkt.

16   94.

17   In March 2020, the Pierce County Defendants filed a Motion to Dismiss, arguing Plaintiff

18   failed to state a claim for relief. Dkt. 55. Shortly thereafter, the Medical Defendants filed a

19   Motion to Dismiss on similar grounds. Dkt. 61. In response to the two Motions to Dismiss,

20   Plaintiff filed medical records regarding treatment he received after leaving the Pierce County

21   Jail. Dkt. 65. Defendant City of Tacoma also brought a Motion to Dismiss or in the alternative,

22   Motion for a More Definite Statement. Dkt. 73. The Court converted both Motions to Dismiss to

23   Motions for Summary Judgment and ordered supplemental briefing. Dkt. 75. The Court granted

24

1    Defendant City of Tacoma's Motion for a More Definite Statement and denied without prejudice

2    Defendant City of Tacoma's Motion to Dismiss. Dkt. 90. The Court granted Plaintiff leave to

3    amend his Complaint, and the Pierce County Defendants and Medical Defendants' converted

4    Motions for Summary Judgment were denied as moot. Dkt. 91, 95, 113. On August 31, 2020,

5    Plaintiff filed his Third Amended Complaint (hereinafter "Complaint"). Dkt. 94.

6        On September 14, 2020, all three sets of Defendants filed the instant dispositive motions.

7    Dkt. 96, 98, 100. On October 6, 2020, Plaintiff filed his Response to the City of Tacoma's

8    Motion to Dismiss. Dkt. 106. Defendant City of Tacoma filed its Reply on October 9, 2020. Dkt.

9    107. Plaintiff filed a second Response on October 28, 2020, which the Court construes as a

10   Surreply. Dkt. 117. Pursuant to Local Civil Rule 7(g)(2), surreplies are limited to requests to strike

11   material contained in or attached to a reply brief. "Extraneous argument or a surreply filed for any

12   other reason will not be considered." *Id*; *see also Herrnandez v. Stryker Corp.*, 2015 WL

13   11714363, at *2 (W.D. Wash. Mar. 13, 2015). As surreplies are not considered by this Court,

14   Plaintiff's Surreply (Dkt. 117) is stricken and will not be considered in ruling on Defendant City of

15   Tacoma's Motion to Dismiss (Dkt. 98).

16       On October 13, 2020, Plaintiff filed his Response to the Medical Defendants' Motion for

17   Summary Judgment. Dkt. 111. The Medical Defendants filed their original Reply on October 9,

18   2020 before Plaintiff filed his Response on October 13, 2020. Dkt. 108. The Medical Defendants

19   filed a Surreply on October 16, 2020. Dkt. 114. The Court will consider the Medical Defendants'

20   Surreply as the original Reply was filed before the Medical Defendants had an opportunity to

21   review Plaintiff's late-filed Response. *See* Dkt. 111.

22       On October 14, 2020, Plaintiff filed his Response to the Pierce County Defendants'

23   Motion for Summary Judgment. Dkt. 112. On October 19, 2020, the Court granted the Pierce

24

County Defendants additional time to file a reply. Dkt. 115. The Pierce County Defendants filed a Reply on October 23, 2020. Dkt. 116.

**II.    Defendant City of Tacoma's Motion to Dismiss (Dkt. 98)**

Defendant City of Tacoma argues Plaintiff has failed to state a claim on which relief can be granted. Dkt. 98.

a.    Standard of Review

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the Complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

1    (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

2    state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

3    is to construe a complaint liberally, such construction "may not supply essential elements of the

4    claim that were not initially pled." *Pena*, 976 F.2d at 471.

5            b.   Discussion

6            Defendant City of Tacoma argues Plaintiff failed to allege any facts in the Complaint

7    showing it is liable for the alleged constitutional violations. Dkt. 98. Plaintiff asserts Defendant

8    City of Tacoma is liable because Plaintiff was housed in the Pierce County Jail, which is located

9    in Tacoma, Washington. *See* Dkt. 94.

10           To state a claim against a municipality, Plaintiff must allege facts showing the

11   municipality's employees or agents acted through an official custom, pattern, or policy

12   permitting deliberate indifference to, or violating, Plaintiff's civil rights, or showing the

13   municipality ratified the unlawful conduct. *Monell v. New York City Dep't of Social Servs.*, 436

14   U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). To

15   establish municipality liability under § 1983, Plaintiff must show: (1) a deprivation of a

16   constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate

17   indifference to Plaintiff's constitutional rights; and (4) the policy is the moving force behind the

18   constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v.*

19   *Harris*, 489 U.S. 378, 385-90 (1989). The Supreme Court has emphasized the unconstitutional

20   acts of a government agent standing alone cannot lead to municipal liability; there is no

21   *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 692.

22           Here, Plaintiff has failed to allege facts showing Defendant City of Tacoma is liable

23   under § 1983. Plaintiff does not allege Defendant City of Tacoma itself established a policy

24

REPORT AND RECOMMENDATION - 5

which amounted to deliberate indifference and was the moving force behind the alleged

constitutional violations. Rather, in his Response, Plaintiff alleges Defendant City of Tacoma is

liable because it has established a policy which ignores the inadequate healthcare within the

Pierce County Jail, which is a "well known deficiency to both the public and city officials." Dkt.

106. However, Plaintiff acknowledges he was detained in the Pierce County Jail and is suing

Pierce County and NaphCare employees. *See* Dkt. 94. Plaintiff does not allege any facts against

employees of Defendant City of Tacoma. *See id.*

Defendant City of Tacoma and Defendant Pierce County are two separate municipalities

and the factual allegations supporting Plaintiff's Complaint do not implicate Defendant City of

Tacoma. Plaintiff has failed to allege facts showing how Defendant City of Tacoma operates,

controls, or has any responsibility for setting policy at the Pierce County Jail. The only

connection is the Pierce County Jail is located within the City of Tacoma. Accordingly, the Court

recommends Defendant City of Tacoma's Motion to Dismiss (Dkt. 98) be granted.

The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must

have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they

cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

The Court finds Plaintiff cannot cure the deficiencies of his Complaint as to any potential claims

against Defendant City of Tacoma. Therefore, the Court finds Plaintiff should not be given leave

to amend his Complaint.

**III.    Pierce County and Medical Defendants' Motions for Summary Judgment (Dkt. 96, 100)**

The Pierce County Defendants assert they are entitled to summary judgment because: (1)

Defendant Pierce County is not a proper party; (2) Plaintiff has failed to allege a constitutional

violation against the individually named Pierce County Defendants; and (3) Plaintiff has failed to

1    state a claim under the Americans with Disabilities Act ("ADA"). Dkt. 96. In support of their

2    Motion, the Pierce County Defendants submit the following evidence: (1) Declaration of Miquel

3    Balderrama, M.D. and (2) Plaintiff's medical records. Dkt. 84.

4         The Medical Defendants assert they are entitled to summary judgment because: (1)

5    Plaintiff has failed to demonstrate the Medical Defendants acted with objective deliberate

6    indifference and (2) Plaintiff has failed to allege Defendant NaphCare is vicariously liable. Dkt.

7    100. The Medical Defendants submit the following evidence: (1) Declaration of Counsel,

8    Jonathan Ballard; (2) Plaintiff's medical records; and (3) Plaintiff's grievances. Dkt. 82.

9         Plaintiff was served with *Rand* Notices. Dkt. 97, 101. However, Plaintiff did not file any

10   declarations or exhibits refuting Defendants' presentation of the relevant events and did not sign

11   his Responses under penalty of perjury. Dkt. 111, 112. Plaintiff's Complaint[3] was not signed

12   under penalty of perjury and thus, may not be treated as an affidavit to oppose summary

13   judgment. Dkt. 94; *Cf. Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir. 1995) (verified

14   complaint based on personal knowledge of admissible evidence can constitute an affidavit in

15   opposition to motion for summary judgment) and *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

16   2004) (Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to

17   summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such

18   contentions are based on personal knowledge and set forth facts that would be admissible in

19

20

21   _____

22        [3] To the extent Plaintiff's prior complaint, *see e.g.* Dkt. 35, was filed under the penalty of perjury, his
     previous complaints were superseded by the filing of the operative Complaint, Dkt. 94. *See Ferdik v. Bonzelet*, 963
23   F.2d 1258, 1262 (9th Cir. 1992) (An amended complaint supersedes the original complaint.). The original complaint
     is "treated thereafter as non-existent." *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) *overruled on other grounds by
     Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). Thus, any prior complaint will not be considered by the
24   Court as a valid opposition to Defendants' Motions. *See id.*

REPORT AND RECOMMENDATION - 7

1    evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions

2    or pleadings are true and correct.").

3            Therefore, although Plaintiff was warned failure to submit evidence in opposition to

4    Defendants' Motions could result in dismissal of his case, he failed to refute any of the facts

5    provided by Defendants.

6            a.    Undisputed Facts

7            Because Plaintiff has not presented any evidence in opposition to Defendants' Motions,

8    and his Complaint is not signed under penalty of perjury, the evidence tendered by Defendants in

9    support of their Motions is undisputed. *See e.g. Williams v. Warner*, 2017 WL 1753531, at *2

10   (W.D. Wash. Apr. 3, 2017), *report and recommendation adopted*, 2017 WL 1710978 (W.D.

11   Wash. May 3, 2017). The following summarizes those facts.

12           In March 2017, prior to his detainment at the Pierce County Jail, Plaintiff presented to St.

13   Anthony Hospital Emergency Department, reporting he had jumped off a building. Dkt. 82,

14   Ballard Decl., Ex. 1 at 9-16 (CHI Franciscan medical records). Plaintiff was diagnosed after an

15   x-ray with a "comminuted moderately displaced oblique fracture at the medial malleolus." Dkt.

16   82, Ballard Decl., Ex. 1 at 9-16. Plaintiff was discharged, "ambulating normally," with directions

17   to follow-up with an outside provider. Dkt. 82, Ballard Decl., Ex.1 at 9-16.

18           In May 2017, Plaintiff was briefly incarcerated at the Pierce County Jail. *Id.* At intake,

19   Plaintiff reported his past ankle injury but stated after two weeks he took off the soft cast and did

20   not follow up with the hospital for further care. Dkt. 82, Ballard Decl., Ex. 1 at 35. Plaintiff was

21   observed walking independently with a steady gait before he was released. Dkt. 82, Ballard

22   Decl., Ex. 1 at 35.

23

24

On November 16, 2017, Plaintiff was again detained at the Pierce County Jail, which is the detainment at issue in the present lawsuit. Dkt. 82, Ballard Decl., Ex. 1 at 59-63. Upon arrival at the Pierce County Jail, a booking nurse conducts an initial health screening for each inmate. Dkt. 84, Balderrama Decl., at 1-2. Plaintiff was examined by Defendant Meghan Bailey, RN. Dkt. 82, Ballard Decl., Ex. 1 at 59-63. During the examination, Plaintiff denied "any injuries or [p]ain" or "any current medical issues." Dkt. 82, Ballard Decl., Ex. 1 at 59-63. Plaintiff did not indicate he had an ankle injury which required medical care or that he was taking any medication. Dkt 84, Balderrama Decl., at 1-2. Plaintiff signed his intake form, as confirmation of its accuracy. Dkt. 82, Ballard Decl., Ex. 1 at 63.

Approximately ten days later on November 27, 2017, Plaintiff reported to sick call indicating he "ha[d] a broken ankle, and needs ankle support" while requesting his personal shoes. Dkt. 82, Ballard Decl., Ex. 1 at 30. On December 4, 2017, Plaintiff was seen by a non-party nurse, scheduled for an x-ray, allowed use of a lower bunk, and provided medication for pain. Dkt. 82, Ballard Decl., Ex. 1 at 42-44. Plaintiff was encouraged to elevate his ankle. *Id.* An assessment indicated Plaintiff was walking independently with a steady gait and without a limp. Dkt. 82, Ballard Decl., Ex. 1 at 42-44. A plan was developed to follow-up after the x-ray was performed and Plaintiff's medical records were obtained from St. Anthony Hospital. Dkt. 82, Ballard Decl., Ex. 1 at 42-44.

On December 6, 2017, an x-ray was performed and interpreted by a radiologist, who indicated the impression was of an "[o]ld partially healed fracture" of the medial malleolus. Dkt. 82, Ballard Decl., Ex. 1 at 17. The radiologist reported "[n]o acute pathology." *Id.* The same day, Plaintiff was seen by Defendant Irina Hughes, NP. Dkt. 82, Ballard Decl., Ex. 1 at 34-35. Plaintiff described his ankle injury, stating it occurred when he was running from police at which

time he jumped over a fence and broke his left ankle. Dkt. 82, Ballard Decl., Ex. 1 at 34-35.
Plaintiff told Defendant Hughes he was told he needed surgery, but he did not follow up with an
orthopedist as directed. Dkt. 82, Ballard Decl., Ex. 1 at 34-35. On examination, Plaintiff
demonstrated full range of motion and the capability of walking without difficulty. Dkt. 82,
Ballard Decl., Ex. 1 at 34-35. Plaintiff reported pain at 4-5 out of 10, worse with walking. *Id.*
Defendant Hughes prescribed a splint, crutches, and Tylenol for his pain complaints, and follow-
up with an orthopedist. Dkt. 82, Ballard Decl., Ex. 1 at 34-35. Plaintiff "verbalized
understanding [and] agreed with [the] treatment plan." Dkt. 82, Ballard Decl., Ex. 1 at 34-35.

On December 18, 2017, Plaintiff requested sick call stating he fell and hurt his shoulder.
Dkt. 82, Ballard Decl., Ex. 1 at 30. A non-party nurse attempted to see Plaintiff for sick call, but
he was not available because of a court date. *Id.* at 33. On December 22, 2017, Plaintiff was seen
by Defendant Elizabeth Warren, RN. Plaintiff reported he had been experiencing pain in his left
shoulder and back for six days. Dkt. 82, Ballard Decl., Ex. 1 at 39-41. Defendant Warren
instructed Plaintiff to continue taking acetaminophen and educated him on proper body
mechanics, activity restrictions, and stretching exercises. Dkt. 82, Ballard Decl., Ex. 1 at 39-41.

On December 22, 2017, Plaintiff's medical records were obtained from the CHI
Franciscan Health related to his visit to the St. Anthony Hospital on March 20, 2017 and
reviewed by Defendant Hughes. Dkt. 82, Ballard Decl., Ex. 1 at 9-16, 33; Dkt. 84 at 3.
Defendant Hughes noted a "closed displaced Fx of medi[a]l malleolus of left tibia." Dkt. 82,
Ballard Decl., Ex. 1 at 33. A splint and glass stirrup were applied. Dkt. 82, Ballard Decl., Ex. 1 at
33. Treatment notes also indicate a follow up with Dr. Bear Lance at Gig Harbor. *Id.*

On December 31, 2017, Plaintiff was seen during sick call by Defendant Bridget
Stixrood, RN, and he requested a hard cast. Dkt. 82, Ballard Decl., Ex. 1 at 27, 33. Defendant

1   Stixrood noted the splint was still in place and told Plaintiff he did not need a hard cast.

2   Defendant Stixrood informed Plaintiff he would be seen by another provider in a follow up. Dkt.

3   82, Ballard Decl., Ex. 1 at 33.

4          On January 3, 2018, Plaintiff underwent a follow-up x-ray. Dkt. 82, Ballard Decl., Ex. 1

5   at 5. The radiologist indicated an "[o]ld healed medial malleolar fracture with no change" from

6   the prior study interpreted by a different radiologist roughly a month prior on December 6, 2017.

7   Dkt. 82, Ballard Decl., Ex. 1 at 5.

8          On January 5, 2018, Plaintiff was seen by Pierce County Jail's Medical Director,

9   Defendant Miguel Balderrama, M.D. Dkt. 82, Ballard Decl., Ex. 1 at 32-33. Defendant

10  Balderrama's treatment notes state no edema, no neuro vascular deficits, and some limitation on

11  flexion and extension of ankle. *Id.* Defendant Balderrama concluded the repeat x-ray

12  demonstrated "only evidence of [an] old fracture" that was healed "with normal interarticular

13  space." Dkt. 82, Ballard Decl., Ex. 1 at 32-33. Defendant Balderrama instructed Plaintiff he

14  needed to "walk without splinting since this is an old injury now healed." Dkt. 82, Ballard Decl.,

15  Ex. 1 at 32-33.

16         On January 9, 2018, Plaintiff filed a grievance. Dkt. 82, Ballard Decl., Ex. 1 at 4

17  (Grievance 2). He stated, "I believe my leg is still broken, at the very least it has a serious

18  prob[lem] which is being neglected by medical." Dkt. 82, Ballard Decl., Ex. 1 at 4 (Grievance 2).

19  Plaintiff stated he was "still in pain and yet made to walk on this injury." Dkt. 82, Ballard Decl.,

20  Ex. 1 at 4 (Grievance 2). In the grievance form, Plaintiff indicated he tried to solve this problem

21  by speaking with Defendant Heishman, a corrections officer. *Id.*

22         Defendant Slothower responded to the grievance:

23         You first reported your ankle injury to medical staff on 11/27/2017. You
           were seen by medical staff on 12/4/17 at which time you were provided with pain

24

REPORT AND RECOMMENDATION - 11

1   |   medication, a low bunk, and x-rays were ordered. X-rays were completed on
2   |   12/7/17 and they showed an old partially healed fracture. At this time you were
    |   provided with a splint and crutches. You were seen frequently by nursing staff and
3   |   providers during this time and were not made to walk on your injury. A follow up
    |   x-ray was completed on 1/3/2018 which showed that your ankle fracture is healed
4   |   and no further treatment is needed. On January 5, 2018, you saw Dr. Balderrama
    |   who explained these findings to you and explained that the recommended treatment
    |   at this time is to walk normally and that crutches and splinting is not needed.

Dkt. 82, Ballard Decl., Ex. 3 (Response 2).

In mid-January, Plaintiff was seen by a non-party nurse for left foot pain. Dkt. 82, Ballard

Decl., Ex. 1 at 32. Plaintiff's condition was reported to Defendant Hughes who prescribed

Bengay ointment and an extra blanket roll so Plaintiff could elevate his leg. Dkt. 82, Ballard

Decl., Ex. 1 at 32. On January 18, 2018, Plaintiff filed a third grievance, stating he believed his

leg was still broken. Dkt. 82, Ballard Decl., Ex. 5 (Grievance 3). Plaintiff complained about

comments made by a non-party during his treatment with medical providers. Dkt. 82, Ballard

Decl., Ex. 5 (Grievance 3). The grievance response indicated there was no acute injury in

Plaintiff's ankle based on repeated x-rays. Dkt. 82, Ballard Decl., Ex. 5 (Response 3).

In February 2018, Plaintiff was transferred to the Washington Department of Corrections

("DOC"). Dkt. 84 at 1. Plaintiff is currently housed at the California Substance Abuse Treatment

Facility/State Prison in Corcoran, California. *See* Dkt.

b.  Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

1   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

2   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

3   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

4   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

5   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

6   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

7   *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8   626, 630 (9th Cir. 1987).

9                     c.   Medical Treatment

10          Plaintiff alleges Defendant Balderrama and the Medical Defendants failed to provide

11  Plaintiff with adequate medical care for his ankle and neck, shoulder, and back pain. Dkt. 94.

12  Specifically, Plaintiff alleges Defendant Bailey failed to provide adequate medical care when she

13  knew of Plaintiff's complaints of pain and inability to walk on intake. Dkt. 94 at 7-8. Plaintiff

14  alleges Defendant Stixrood failed to provide adequate medical care and was not able to perform

15  a "simple application of a splint" and later repair the splint. Dkt. 94 at 7-8. In one section of the

16  Complaint, Plaintiff alleges Defendant Warren failed to provide treatment, in another section,

17  Plaintiff alleges Defendant Warren provided Plaintiff with medication. Dkt. 94 at 7. Plaintiff

18  alleges Defendant Slothower responded after Plaintiff fell, and Plaintiff was provided

19  medication. Dkt. 94 at 7, 9. Plaintiff alleges Defendants Slothower and Hughes directed

20  subordinates to ignore Plaintiff. Dkt. 94 at 7-9.[4] Plaintiff alleges Defendant Balderrama

21  misdiagnosed Plaintiff's ankle, determining it was no longer broken. Dkt. 94 at 4-5.

22

23  _____

24      [4] Plaintiff's allegations against Defendants Slothower and Hughes related to directing subordinates to
    ignore Plaintiff's medical conditions are also addressed with respect to the issue of vicarious liability, *see supra.*

1    It is undisputed Plaintiff was not incarcerated following a formal adjudication of guilt at

2  the time of the alleged violations. *See* Dkt. 82, 84, 94. A pretrial detainee's right to adequate

3  medical care arises under the due process clause of the Fourteenth Amendment. *Gordon v. Cnty.*

4  *of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018). The elements of such a claim are: (1) "the

5  defendant made an intentional decision with respect to the conditions under which the plaintiff

6  was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious

7  harm"; (3) "the defendant did not take reasonable available measures to abate that risk, even

8  though a reasonable official in the circumstances would have appreciated the high degree of risk

9  involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking

10  such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125.

11    With respect to the third element, "the defendant's conduct must be objectively

12  unreasonable, a test that will necessarily turn on the facts and circumstances of each particular

13  case." *Id.* (omitting internal punctuation and quotation marks). " '[M]ere lack of due care' " is

14  not enough; "the plaintiff must 'prove more than negligence but less than subjective intent –

15  something akin to reckless disregard.' " *Id.* (quoting *Castro*, 833 F.3d at 1071).

16    A mere difference of opinion between a prisoner and medical staff is not sufficient to

17  establish a deliberate indifference claim. *See Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir.

18  1981); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim

19  involving choices between alternative courses of treatment, a prisoner must show that the chosen

20  course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

21  conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi,* 391 F.3d at 1058;

22  (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). *See Silverman v. Lien,* 2020 WL

23

24

1  1032228, at *5 (N.D. Cal. Mar. 3, 2020) (applying Eighth Amendment difference of medical

2  opinion case law to pretrial detainee case under *Gordon*).

3       The crux of Plaintiff's inadequate medical treatment claim is he did not receive the

4  diagnosis and specific treatment he wanted. *See* Dkt. 94. With respect to the first *Gordon* factor,

5  there is no dispute Defendant Balderrama and the Medical Defendants made intentional

6  decisions with respect to Plaintiff's medical care. Defendant Balderrama and the Medical

7  Defendants ordered x-rays, provided a splint and crutches, and prescribed medication to address

8  Plaintiff's ankle, back, neck, and shoulder pain. *See* Dkt. 82, 84.

9       However, with respect to the second and third *Gordon* factors, viewing the evidence in

10  the light most favorable to Plaintiff, the undisputed evidence does not show these conditions put

11  Plaintiff at a substantial risk of harm or reasonable available measures were not taken to abate a

12  risk of harm demonstrating reckless disregard.

13       With respect to Defendant Bailey, the evidence reflects Defendant Bailey evaluated

14  Plaintiff at intake in November 2017, at which time he denied any injuries or pain as well as any

15  current medical issues. Dkt. 82, Ballard Decl., Exhibit 1 at 59-63. Plaintiff alleges Defendant

16  Bailey knew of Plaintiff's complaints of pain and inability to walk on or about November 18,

17  2017. Dkt. 94 at 7. However, Plaintiff cannot create a triable issue of fact by simply

18  misrepresenting what took place during a medical examination. *Scott v. Harris*, 550 U.S. 372,

19  380 (2007) ("When opposing parties tell two different stories, one of which is blatantly

20  contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

21  that version of the facts for purposes of ruling on a motion for summary judgment."). Although a

22  pretrial detainee "need not prove those subjective elements about the [defendant's] *actual*

23  awareness of the level of risk," *Gordon,* 888 F.3d at 1124, n.4, Plaintiff has not offered any

24

1  evidence to demonstrate a reasonable official under the circumstances would have known about

2  Plaintiff's ankle injury at the time of the intake examination.

3       With respect to Defendant Stixrood, Plaintiff alleges she was unable to properly apply a

4  splint to his leg. Dkt. 94 at 7. However, Plaintiff has not presented any evidence Defendant

5  Stixrood's application of Plaintiff's splint put Plaintiff at substantial risk of suffering serious

6  harm or that she did not take reasonable available measures to abate such a risk. Plaintiff has not

7  provided any evidence he has any medical training, or he is competent to speak on the proper

8  care and application of a splint. And even if Plaintiff had provided the necessary evidence to

9  show the splint was applied incorrectly, any allegations of proficiency in applying a splint, are at

10  most negligence, and not a constitutional violation under the objective deliberate indifference

11  standard in *Gordon. See Farmer*, 511 U.S. at 835; *Shaw v. Thomas,* 2019 WL 162729, at *24

12  (N.D. Cal. Jan. 10, 2019), *aff'd,* 812 F. App'x 681 (9th Cir. 2020) (premature discontinuation of

13  an arm sling and spica splint would amount only to negligence in providing treatment).

14       With respect to Defendant Warren, the undisputed evidence reflects Defendant Warren

15  saw Plaintiff in response to shoulder and back pain after he fell at which time she instructed

16  Plaintiff to continue taking the acetaminophen he had been prescribed, and educated Plaintiff on

17  proper body mechanics, activity restrictions and stretching exercises. Dkt. 82, Ballard Decl., Ex.

18  1 at 39-41. Thus, the evidence demonstrates Defendant Warren examined Plaintiff, addressed his

19  complaints of pain, and offered pain medication and further education. Plaintiff has not offered

20  any evidence to rebut these records, and thus, Plaintiff has not established a triable issue of fact

21  that Defendant Warren acted with objective deliberate indifference in treating Plaintiff's

22  complaints of pain.

23

24

1    Although Plaintiff's allegations against Defendants Slothower and Hughes are vague, he

2  appears to be generally dissatisfied with his recommended course of treatment. Dkt. 94 at 7-9.

3  Plaintiff alleges Defendant Balderrama should have recommended Plaintiff undergo surgery.

4  Dkt. 94.

5    However, Plaintiff has not provided any outside medical reports demonstrating

6  Defendant Balderrama or the Medical Defendants' care fell below the standard or their actions

7  were objectively unreasonable. Rather, the evidence reflects Defendant Balderrama did not

8  recommend surgery based on an examination and review of Plaintiff's medical records, opining:

> Mr. Wallace should have followed up with an orthopedic specialist and considered surgery in March 2017 at the time of his injury. Once a fracture of the type Mr. Wallace had has healed incorrectly, it is questionable whether surgery will be beneficial for the patient. Such a surgery would be an elective option for Mr. Wallace at the time of his incarceration at the PCDCC from November 16, 2017, to February 15, 2018, and was not emergent or immediately necessary.

Dkt. 84, Balderrama Decl., at 3.

    Plaintiff's position is because he was referred to an outside orthopedist after visiting the

emergency room in March 2017, which Plaintiff failed to do, and in 2018, a DOC provider

recommended surgery, Defendant Balderrama and the Medical Defendants had no choice but to

offer Plaintiff surgery for his ankle. [5] *See* Dkt. 94, 111, 112. However, this theory would strip

---

[5] The Court is not required to comb through the record on its own to come up with reasons to deny a motion for summary judgment. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citing *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). However, the Court notes Plaintiff did provide documentation from the DOC in response to the Pierce County and Medical Defendants' Motions to Dismiss (Dkt. 55, 61), which shows he has been allowed to use a personal wheelchair while housed at another facility and an orthopedist, Dr. Shirzad, recommended Plaintiff receive surgery on his ankle. Dkt. 65. However, this evidence demonstrates at most, a difference of opinion regarding the proper treatment of Plaintiff's ankle injury, which is not sufficient to establish a federal constitutional violation. *See Brown v. King County,* 2018 WL 3353001, at *6 (W.D. Wash. May 21, 2018), *report and recommendation adopted,* 2018 WL 3344662 (W.D. Wash. July 9, 2018) (applying *Gordon* and finding the plaintiff's evidence from his current custodial circumstances showing he has been allowed use of a wheelchair only amounted to a difference of opinion).

1  Defendant Balderrama and the Medical Defendants of any ability to exercise independent

2  medical judgment. To prevail on a claim involving choices between alternative courses of

3  treatment, a prisoner must show the defendant's "chosen course of treatment 'was medically

4  unacceptable under the circumstances.' " *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.

5  2004).[6]

6          Here, there is nothing in the record to suggest Defendant Balderrama or the Medical

7  Defendants' course of treatment was medically unacceptable under the circumstances or that

8  they chose this course with reckless disregard. There is no evidence Plaintiff was denied surgery,

9  pain medication, or treatment without performing any testing, examinations, diagnostic

10 procedures, or review of his prior medical records. There is no evidence Defendant Balderrama

11 or the Medical Defendants simply denied Plaintiff treatment or sent Plaintiff away untreated.

12 There is no evidence surgery was the only acceptable treatment for Plaintiff's ankle pain or that

13 any alternative treatment would be medically unacceptable. Plaintiff is not a medical expert and

14 cannot opine on the best course of treatment. Nor has he presented testimony from a medical

15 expert in support of his position. Rather, Plaintiff's medical records reveal during his

16 appointments with medical providers concerning his ankle injury and back, neck, and shoulder

17 pain, little swelling was detected, Plaintiff's complaints of pain were relatively minor, and his

18 range of motion was only slightly limited at times. Dkt. 82, 84. Plaintiff was observed walking

19 independently with a steady gait and without a limp. *See* Dkt.82, Ballard Decl., Ex. 1 at 42-44.

20 Plaintiff received two x-rays, interpreted by two different radiologists, which ultimately

21

22

23         [6] *Toguchi* also requires that the inmate-plaintiff show that the defendant's course of treatment "was chosen
'in conscious disregard of an excessive risk to the prisoner's health,' " *Toguchi*, 391 F.3d at 1058, but that
requirement only applies when the Eighth Amendment's *subjective* deliberate indifference test is being applied, not

24 the objective deliberate indifference test outlined *Gordon*.

REPORT AND RECOMMENDATION - 18

1   indicated the impression was of an "[o]ld partially healed fracture" of the medial malleolus and

2   radiologist reported "[n]o acute pathology." Dkt. 82, Ballard Decl., Ex. 1 at 17. Defendant

3   Balderrama concluded Plaintiff's ankle injury did not significantly impact Plaintiff's ability to

4   ambulate, and recommended Plaintiff walk without splinting. Dkt. 82, Ballard Decl., Ex. 1 at 32-

5   33.

6          Moreover, Plaintiff has not shown permanent crutches or a splint were necessary to

7   address his ankle pain, such that it would have been objectively reasonable for Defendant

8   Balderrama and the Medical Defendants to temporarily issue a splint and crutches, and then

9   discontinue their use once Plaintiff was able to ambulate. For example, when Plaintiff arrived at

10   the Pierce County Jail, he did not arrive with any ambulatory devices or medication for pain,

11   suggesting these measures were not necessary to address his ankle pain.

12          Plaintiff's dissatisfaction with Defendant Balderrama and the Medical Defendants'

13   course of treatment does not demonstrate they acted with reckless disregard to Plaintiff's medical

14   circumstances or were objectively deliberately indifference. *See e.g. Jackson v. McIntosh*, 90

15   F.3d 330, 332 (9th Cir. 1996) (in the context of an Eighth Amendment analysis, the Ninth Circuit

16   held "where a defendant has based his actions on a medical judgment that either of two

17   alternative courses of treatment would be medically acceptable under the circumstances, plaintiff

18   has failed to show deliberate indifference."); *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989)

19   (finding the plaintiff's allegations prison officials failed to recommend surgery as one doctor had

20   advised evidenced only a mere "difference of medical opinion" which did not constitute medical

21   indifference); *see also Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("[S]tate prison

22   authorities have wide discretion regarding the nature and extent of medical treatment."),

23   *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

24

1    In sum, there is nothing in the record to suggest Defendant Balderrama or the Medical

2    Defendants acted with reckless disregard, particularly considering they continued to treat

3    Plaintiff's ankle injury and complaints of back, neck, and shoulder pain. Plaintiff disputes his

4    diagnosis and course of treatment, but as stated above, disagreement with a medical professional

5    over the appropriate course of treatment does not demonstrate the medical professional has acted

6    with objective deliberate indifference to Plaintiff's serious medical needs by following a

7    particular course of treatment. *See Haag v. San Diego Sheriff Dep't,* 2019 WL 4599843, at *4

8    (S.D. Cal. Sept. 23, 2019) (A plaintiff's claims that jail medical personnel were "procrastinating"

9    by not providing him surgery and while they gave him pain medication, he claimed it did not

10    provide adequate pain relief demonstrated a difference of opinion and did not state a claim of

11    objective deliberate indifference under *Gordon*.); *Sekerke v. Leo,* 2019 WL 424709, at *4 (S.D.

12    Cal. Feb. 4, 2019) (Plaintiff's disagreement over the type of medication prescribed by the

13    defendants was insufficient to support a Fourteenth Amendment claim under *Gordon*.).

14    Because Defendants have presented affirmative evidence negating an essential element of

15    Plaintiff's claims, Plaintiff, as the nonmoving party, "must do more than simply deny the

16    veracity of everything offered." *Matsushita,* 475 U.S. at 586; *see also* Fed. R. Civ. P. 56(e).

17    However, Plaintiff's statements in his Complaint and Responses were not made under the

18    penalty of perjury and cannot be considered as evidence. None of these allegations are factual

19    evidence which the Court can consider as evidence on summary judgment. If a plaintiff fails to

20    present any evidence to support a claim, summary judgment in favor of the defendant is

21    appropriate. *Bias v. Moynihan,* 508 F.3d 1212, 1219 (9th Cir. 2007).

22    And even if Plaintiff's Complaint and Responses were considered as evidence, Plaintiff's

23    allegations would merely demonstrate his own personal opinions about his diagnosis and course

24

1    of treatment. Plaintiff has not shown how he could have or would have personal knowledge of

2    the interior state of his ankle injury or the proper treatment for his back, neck, and shoulder pain.

3    Although Plaintiff clearly believes he would have had a better outcome if he received ankle

4    surgery sooner, he is not a doctor, and he has not presented any medical evidence demonstrating

5    Defendant Balderrama or the Medical Defendants' approach to his symptoms was objectively

6    deliberately indifferent. Plaintiff's opinion as to what was or was not proper care, does not create

7    a triable issue. *See Estelle,* 429 U.S. at 106; *see also Sanchez,* 891 F.2d at 242; *Nelson v. Pima*

8    *Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation

9    do not create a factual dispute for purposes of summary judgment.").

10        Based on the foregoing, Defendant Balderrama and the Medical Defendants have

11   established the absence of a genuine issue of material fact with respect to Plaintiff's medical

12   needs. *See Gordon*, 888 F.3d at 1125. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff

13   has failed to identify with reasonable particularity any evidence which precludes summary

14   judgment. *See Keenan*, 91 F.3d at 1279. Because Plaintiff has not established Defendant

15   Balderrama or the Medical Defendants failed to take reasonably available measures, Plaintiff

16   cannot establish the fourth factor of causation required under *Gordon*.

17        To the extent Plaintiff alleges Defendants Balderrama, Hughes, and Slothower directed

18   their subordinates to ignore Plaintiff, Dkt. 94 at 7-9, there cannot be any supervisory liability if

19   without an underlying constitutional violation. *See Corales v. Bennett,* 567 F.3d 554, 570 (9th

20   Cir. 2009).

21        Accordingly, the Court recommends Defendant Balderrama and the Medical Defendants'

22   Motions for Summary Judgment (Dkt. 96, 100) be granted as to Plaintiff's medical treatment

23   claim.

24

1          d.   Defendant John Doe

2          Plaintiff alleges Defendant Doe is an unidentified employee of NaphCare, who failed to

3   treat Plaintiff for his broken leg, severe pain, and inability to walk. Dkt. 94 at 2. Plaintiff alleges

4   Defendant Doe assisted Defendant Stixrood with application of his splint. Dkt. 94 at 7-8. The

5   Medical Defendants do not address Plaintiff's allegations against Defendant Doe in their Motion

6   for Summary Judgment. Dkt. 100.

7          Although Defendant Doe has not been identified or served and has not joined in the

8   Medical Defendants' Motion for Summary Judgment, the objective deliberate indifferent claim

9   against him is subject to dismissal for the same reasons set forth above; Plaintiff has failed to

10  controvert the Medical Defendants' showing that the Medical Defendants failed to provide

11  adequate medical treatment. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery,* 44 F.3d

12  800, 803 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing

13  defendant, where the plaintiff, in response to summary judgment motion filed by defendant who

14  had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as

15  to claim against nonappearing defendant); *Wenberg v. Devear,* 2015 WL 515378, at *5 (N.D.

16  Cal. Feb. 6, 2015) (dismissing unserved defendant where the deliberate indifference claim

17  against the defendant was subject to dismissal for the same reasons as the remaining defendants).

18  Therefore, the Court recommends Defendant Doe be dismissed.

19          e.   Defendants Blower and Heishman

20          Plaintiff alleges Blower and Heisman knew of the alleged inadequate medical treatment

21  based on the filing of grievances and failed to act. Dkt. 94 at 5. In two grievance forms submitted

22  by the Medical Defendants as evidence, Plaintiff indicated he attempted to speak with Defendant

23

24

1    Heishman, a corrections officer, related to his allegations he was being denied adequate medical

2    treatment. Dkt. 82, Ballard Decl., Ex. 2, 4.

3              A defendant is liable under § 1983 when he personally participates in the constitutional

4    deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). The Ninth Circuit has held a

5    defendant could personally participate in a violation by denying a grievance. In *Colwell v.*

6    *Bannister*, an inmate sued prison officials and supervisory medical personnel, arguing they were

7    deliberately indifferent to his serious medical needs by denying his requests to have surgery to

8    restore his vision. 763 F.3d 1060, 1065 (9th Cir. 2014). One of the doctors denied the inmate's

9    second level grievance based on an administrative policy of denying cataract surgery as long as a

10   prisoner has one good eye, not based on an individual medical determination. *See id.* The Ninth

11   Circuit held that a reasonable jury could find the doctor personally participated in refusing

12   treatment with deliberate indifference. *Id.* at 1070. And in *Snow v. McDaniel*, the Ninth Circuit

13   denied summary judgment to the prison warden and associate warden because the prisoner

14   sufficiently demonstrated that they were aware, through the grievance process and other

15   documentation, that the prisoner was in pain and needed surgery and they "failed to act to

16   prevent further harm." 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds in Peralta*

17   *v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014).

18             Consistent with *Colwell*, other courts in this district have held merely denying a

19   grievance without some decision-making authority or ability to resolve the underlying issue

20   grieved is not enough to establish personal participation. *See Stewart v. Warner*, 2016 WL

21   1104893, at *5 (W.D. Wash. Feb. 29, 2016), *report and recommendation adopted*, No. 2016 WL

22   1089974 (W.D. Wash. Mar. 21, 2016) (holding that nurses who had reviewed and denied the

23   plaintiff's grievances did not personally participate in alleged Eighth Amendment violations

24

1  because they did not have decision-making authority over the plaintiff's care); *see also May v.*

2  *Williams*, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (finding that merely denying

3  grievances is not enough to establish a constitutional claim).

4      Plaintiff has not presented evidence demonstrating how Defendants Blower and

5  Heishman were involved in determining whether Plaintiff had a serious medical need or

6  determining the course of treatment. Even if Defendants Blower and Heishman were aware

7  Plaintiff was seeking or sought medical treatment, there is no evidence they had the authority to

8  provide medical treatment. Without such authority, the mere knowledge of Plaintiff's grievance

9  alone is insufficient to establish personal participation. *See Stewart,* 2016 WL 1104893 at *5.

10  Therefore, the Court recommends Defendants Heishman and Blower be dismissed from this

11  action.

12      f.    Defendants Pierce County and NaphCare

13      Plaintiff alleges Defendant Pierce County[7] has a policy that requires a prisoner to obtain

14  "permission" to grieve an issue. Dkt. 94 at 5. The Pierce County Defendants argue Plaintiff has

15  failed to state a claim as to any Pierce County policy. Dkt. 96 at 6.

16      Plaintiff alleges Defendant NaphCare has a policy to refuse treatment for shoulder and

17  neck pain because it considers such pain to be "non-serious illness." Dkt. 94 at 8. The Medical

18  Defendants move for the Court to dismiss Defendant NaphCare because Plaintiff's conclusory

19  allegations regarding the existence of a policy or custom unsupported by factual allegations are

20  insufficient to state a *Monell* claim. Dkt. 100 at 14.

21

22

23

24      [7] The Pierce County Defendants incorrectly argue Pierce County as an entity is not named as a Defendant. Dkt. 96 at 10-11; *See* Dkt. 94 at 1-2 (Plaintiff named Pierce County as a Defendant).

1    A municipality and other local governmental bodies are "persons" within the meaning of

2    §1983, however, a "municipality may not be held liable under §1983 solely because it employs a

3    tortfeasor." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S 397, 403 (1997).

4    In order to state a claim against a municipality, a plaintiff must show the municipality employees

5    or agents acted through an official custom, pattern, or policy permitting deliberate indifference

6    to, or violating, the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *See*

7    *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). Specifically, a

8    plaintiff must show (1) deprivation of a constitutional right; (2) the municipality has a policy; (3)

9    the policy amounts to deliberate indifference to a plaintiff's constitutional rights; and (4) the

10    policy is the moving force behind the constitutional violation. *See Oviatt v. Pearce*, 954 F.2d

11    1470, 1474 (9th Cir. 1992). Hence, for a plaintiff to recover against a county, claiming

12    supervisory liability is not enough; a county may only be held liable if its policies or customs are

13    the "moving force behind the constitutional violation." *City of Canton*, 489 U.S. at 389 (quoting

14    *Monell*, 436 U.S. at 694). *Monell* applies to private entities such as Defendant NaphCare. *See*

15    *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

16    Here, Plaintiff alleges Pierce County and NaphCare employees failed to provide adequate

17    medical treatment for Plaintiff's ankle injury and failed to provide reasonable accommodations.

18    Dkt. 94. Plaintiff makes a variety of unsupported arguments based on speculation and

19    assumptions, arguing Defendant Pierce County's grievance policy requires permission, and

20    Defendant NaphCare's has a policy to refuse treatment for shoulder and neck pain because it

21    considers such pain to be "non-serious illness." Dkt. 94. However, none of these allegations are

22    factual evidence which the Court can consider as evidence on summary judgment. "[M]ere

23    allegation and speculation do not create a factual dispute for purposes of summary judgment."

24

1  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). If a plaintiff fails to

2  present any evidence to support a claim, summary judgment in favor of the defendant is

3  appropriate. *Bias v. Moynihan,* 508 F.3d 1212, 1219 (9th Cir. 2007).

4     Moreover, the allegations in Plaintiff's Complaint pertain only to an alleged refusal to

5  treat Plaintiff's prior ankle injury and his back, neck, and shoulder pain. Dkt. 94. Plaintiff's

6  allegations do not imply a general pattern of conduct. The Ninth Circuit has made clear that

7  "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must

8  be founded upon practices of sufficient duration, frequency and consistency that the conduct has

9  become a traditional method of carrying out policy." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th

10 Cir. 1996). Plaintiff's contention a custom existed which resulted in the violation of his

11 constitutional rights is conclusory and insufficient to state a claim.

12    For the above stated reasons, the Court concludes Defendants Pierce County and

13 NaphCare should be dismissed.

14          g.   Conditions of Confinement – Transportation

15    Plaintiff alleges during transport to mandatory Court appearances; he was subjected to

16 "traveling in a manner which were [sic] unaccommodating to his disabilities. Plaintiff was

17 retained by shackles at the hands and feet…." Dkt. 94 at 3-4. Plaintiff has not identified any

18 Defendant responsible for his transport. *See id.* Defendants do not address these claims in their

19 briefing. Dkt. 96,  .

20    To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

21 violation of rights protected by the Constitution or created by federal statute, and (2) the

22 violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

23 *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege

24

1  facts showing how individually named defendants caused, or personally participated in causing,

2  the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold*

3  *v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

4       Plaintiff does not explain how any of the named Defendants participated in transporting

5  Plaintiff to his court appearances. Rather, Plaintiff provides conclusory assertions which allege

6  Defendants, collectively, are responsible for the alleged harms. Therefore, Plaintiff has not

7  alleged sufficient facts to support the alleged claims raised in the Complaint as to his

8  transportation to his court appearances. *See Jones v. Community Development Agency*, 733 F.2d

9  646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not

10  sufficient to state § 1983 claims). The Court recommends any conditions of confinement claims

11  related to Plaintiff's transportation to his court appearances be dismissed.

12       h.  Qualified Immunity

13     The Pierce County Defendants argue they are entitled to qualified immunity. Dkt. 96 at 9.

14  Because the Court has already determined the Pierce County Defendants are entitled to summary

15  judgment as to all Plaintiff's underlying claims, the Court declines to determine whether the

16  Pierce County Defendants enjoy qualified immunity.

17  **IV.    ADA Violations**

18       Plaintiff alleges Defendant Pierce County[8] violated the ADA by failing to accommodate

19  Plaintiff with a wheelchair, handicap accessible cell and shower, and "facilities" for handicapped

20  prisoners. Dkt. 94 at 9. Plaintiff seeks damages. *Id.*

21

22

23

---

[8] Plaintiff also alleges Defendant City of Tacoma violated the ADA. Dkt. 94 at 9. However, as discussed

24  above, Plaintiff failed to state a claim against City of Tacoma. *See supra.*

1     The ADA applies to prisons and jails and prohibits discrimination against disabled or

2     handicapped persons. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pierce v. County of*

3     *Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). The ADA provides a "qualified individual with a

4     disability" cannot, "by reason of such disability, be excluded from participation in or be denied

5     the benefits of the services, programs, or activities of a public entity, or be subjected to

6     discrimination by any such entity." 42 U.S.C. § 12132.

7     "To state a claim of disability discrimination under Title II [of the ADA], the plaintiff

8     must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is

9     otherwise qualified to participate in or receive the benefit of some public entity's services,

10    programs, or activities; (3) the plaintiff was either excluded from participation in or denied the

11    benefits of the public entity's services, programs, or activities, or was otherwise discriminated

12    against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by

13    reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

14    In order to recover money damages under Title II, a plaintiff must prove that he was

15    discriminated against intentionally and the Ninth Circuit uses the "deliberate indifference

16    standard." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138–39 (9th Cir. 2001). To prove

17    intentional discrimination, Plaintiff must show: 1) that a public entity had knowledge that a

18    violation of his rights under the ADA was substantially likely to occur; and 2) at a minimum, the

19    public entity failed to act. *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir. 2002).

20    The Pierce County Defendants argue Plaintiff has not shown any alleged discrimination

21    was on the basis of Plaintiff's alleged disability. Dkt. 96 at 11-12. The gravamen of Plaintiff's

22    Complaint is Defendant Pierce County denied him access to an accessible cell and shower which

23    would have been provided to a handicapped individual. *See* Dkt. 94. Based on the undisputed

24

evidence, Plaintiff was not confined to a wheelchair and when examined by medical providers,

he demonstrated an ability to walk and a full range of motion. Dkt. 84-1, Balderrama Decl., at

10. In response, Plaintiff has failed to present any evidence which calls into question the Pierce

County Defendants' evidence demonstrating Plaintiff is not an individual with a disability.

Moreover, aside from Plaintiff's allegations, there is no evidence in the record the Pierce County

Jail did not provide adequate facilities or permit Plaintiff to shower safely. There are no facts in

record demonstrating Plaintiff was prevented from showering, he needed assistance or

accommodations to safely shower. Although Plaintiff alleges he was denied a shower and the

ability to bathe in his Complaint, *see* Dkt. 94, these allegations are not factual evidence which

the Court can consider as evidence on summary judgment. The evidence demonstrating Plaintiff

fell once is not sufficient to demonstrate by itself the denial of services or discrimination. *See*

Dkt. 82, Ballard Decl., Ex. 1 at 30-33. Plaintiff has also failed to present any evidence which

shows his placement in general population and denial of a handicap accessible shower and/or cell

was the result of Defendant Pierce County's deliberate failure to act in response to Plaintiff's

request for a reasonable accommodation. *See Duvall,* 260 F.3d at 1139-40.

Thus, the Court recommends Plaintiff's claim under Title II of the ADA against

Defendant Pierce County for monetary damages be dismissed.

**V.      Leave to Amend**

The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must

have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they

cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

At the initiation of this case, before the Court directed service of the original Complaint, the

Court notified Plaintiff of potential deficiencies in his Complaint. *See* Dkt. 17. Moreover, The

1   Pierce County and Medical Defendants' first Motions to Dismiss which were converted to

2   Motions for Summary Judgment placed Plaintiff on notice of the deficiencies of his Complaint.

3   *See* Dkt. 55, 61. Plaintiff was granted an opportunity to amend his Complaint after Defendants'

4   filed their Motions. Dkt. 86, 90, 94. Therefore, the Court finds leave to amend is not warranted in

5   this case. *See Carter v. C.I.R.*, 784 F.3d 1006, 1009 (9th Cir. 1986) (finding the court did not

6   abuse its discretion in failing to grant leave to amend *sua sponte* where the government's motion

7   provided notice to the *pro se* plaintiff and the plaintiff did not seek to amend his petition after the

8   government's motion had been filed); *Bowen v. Chrysler Corp.*, 9 F.3d 1550 (9th Cir. 1993) ("If

9   a non-prisoner pro se plaintiff has adequate notice of the insufficiencies of his complaint, the

10  court need not grant leave to amend sua sponte.").

11      **VI.    Conclusion**

12          In conclusion, the Court finds Plaintiff failed to allege facts and the evidence fails to

13  show Defendants violated his constitutional rights. The Court finds leave to amend is not

14  warranted. Accordingly, the Court recommends the City of Tacoma's Motion to Dismiss (Dkt.

15  98) and the Pierce County and Medical Defendants' Motions for Summary Judgment (Dkt. 96,

16  100) be granted.

17

18

19

20

21

22

23

24

1    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

6  December 11, 2020, as noted in the caption.

7

8    Dated this 9th day of November, 2020.

9

10    David W. Christel
     United States Magistrate Judge